**In re the Marriage of Janet K. LOWE, Petitioner, Respondent,**

v.

**Douglas S. LOWE, Appellant.**

**No. C4–85–327.**

Court of Appeals of Minnesota.

Aug. 6, 1985.

Jack F. Daly, Jr., Minneapolis, for respondent.

Douglas S. Lowe, pro se.

Considered and decided by CRIPPEN, P.J., and SEDGWICK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

This appeal is from an amended judgment and decree dissolving the Lowe's 19-year marriage. Appellant contests the trial court's valuation of respondent's company, division of marital estate and allocation of marital debts. We affirm.

## FACTS

The parties were married in 1966. During the marriage both completed advanced college degrees. Appellant has a masters degree in accounting, is a certified public accountant, and operates his own accounting firm. Respondent has a masters degree in vocational rehabilitation and is sole owner of her business, Rehabilitation Counselors, Inc. The parties own the building in which they each rent office space. The trial court awarded the business to each owner, the office building to appellant and the homestead to respondent.

## ISSUE

Did the trial court err in valuation and division of marital assets and allocation of debts?

## ANALYSIS

At trial each party's expert valued respondent's business. Respondent's expert utilized a "net realizable value" approach. He reached a valuation of $35,000 by using the December 1983 book value of $45,372, adjusted for doubtful accounts ($1,060), uncollectible loans ($2,664), fixed assets ($6,203) and deferred incorporation costs ($208).

Appellant's expert capitalized earnings of Rehabilitation Counselors, Inc. and arrived at a value of $234,000. He defined his approach as "the ability to have cash flow and income flow over a period of time." He assumed yearly earnings of $36,000 and applied a 6.5% cap rate. He did not discount for lack of marketability. He assumed respondent would be required to sign a non-compete agreement for the metropolitan area if she sold the business.

Respondent owns 100% of the stock in her business providing job placement services to industrially injured clients. In 1978 this was a relatively new field with few competitors. Since 1981, many counselors have entered the field, including some of respondent's employees who left to start their own business. The business can only be sold to a person in the field of rehabilitation counseling. The stock is not readily marketable.

The trial court made extensive findings. In a well-reasoned memo attached to its findings the court analyzed recent cases concerning valuation of closely held corporations and concluded that *Rogers v. Rogers*, 296 N.W.2d 849 (Minn.1980), was similar to the present fact situation. In *Rogers* the husband owned 85% of a service corporation in which he also was the key man. The supreme court was concerned with substantial flaws in the appraisal of appellant's interest, such as including the officers' salaries when calculating net income of the corporation (except as those salaries may reflect a distribution of profits), and the failure to take into account appellant's importance to his corporation.

> To capitalize the earnings of RFA (corporation) on the assumption that appellant will continue to contribute his talents and services is, essentially, to capitalize appellant. An award made on this basis would, in effect, give respondent a forced share of appellant's future work.

*Id.* at 853.

Although appellant's appraiser subtracted respondent's salary before capitalizing earnings, the trial court concluded that the rationale of *Rogers*, that one spouse should not get a forced share of the other spouse's future work, could logically be extended so that one spouse should not benefit from a valuation method that denies or restricts the other spouse's future employment options. Appellant's valuation had that effect. The value was based, in part, on an assumed sale where respondent would be required to sign a non-compete agreement.

Respondent is licensed in Minnesota, has the majority of her clients in the metropolitan area, and has built her reputation here. The sale of her business with a non-compete agreement would substantially deprive her of her livelihood.

Having rejected appellant's valuation, the trial court also reasoned that respondent's expert opinion of $35,000, representing book value, was unrealistic. The trial court added the sum of $25,000 to the book value as "good will." The latter was defined to include the ongoing value to the corporation of contributions by employees other than respondent in generating referrals and paying a percentage of business they brought in to the corporation. The total value of $60,000 has an acceptable basis in fact and principle and was not an abuse of the trial court's discretion. *Castonquay v. Castonquay*, 306 N.W.2d 143 (Minn.1981).

■ There was no error in awarding appellant the commercial building and building account when he had the experience and training in real estate to be in the best position to sell or manage it.

■ There was no error in crediting appellant's share of marital assets with the $18,000 he surreptitiously took from the children's Clifford Trusts, or in crediting respondent's share with the full value of a money market account from which she had withdrawn $10,000.

We find no merit to appellant's remaining claims.

## DECISION

The trial court did not err in rejecting a valuation of respondent's business which was premised on a sale of the business requiring respondent to sign a non-compete agreement. The adoption by the trial court of a valuation of respondent's business not suggested by either party's expert was supported by the evidence and clearly set forth in the court's findings. Affirmed.